UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID G.M.,[1] <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al., <br><br> Respondents. | No. 1:26-cv-00369-TLN-CSK <br><br> **ORDER** |

This matter is before the Court on Petitioner David G.M.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction ("PI") should not issue.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

I. **FACTUAL BACKGROUND**[2]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 2.) Petitioner is an asylum seeker from Mexico, who was briefly detained by federal agents after entering the United States in 2024. (*Id.* at 10.) After determining that he was not a flight risk or danger to the community, the agents released him on his own recognizance pursuant to 8 U.S.C. § 1226(a), with a Notice to Appear ("NTA") for removal proceedings in the San Francisco Immigration Court. (*Id.* at 10–11.) Petitioner was also given a credible fear interview for which he received a positive decision. (*Id.* at 11.)

Petitioner then went to live in Berkeley, California with his same-sex partner and they eventually moved to Pittsburg, California. (*Id.*) During his time in the United States, Petitioner found gainful employment in the construction field and tries his best to contribute to society and work hard. (*Id.*)

On March 3, 2025, Petitioner applied for asylum, withholding removal, and relief under the Convention Against Torture. (*Id.*) Petitioner applied for asylum within the one-year filing deadline and has employment authorization. (*Id.*)

Petitioner has at all times acted in good faith and diligently complied with all conditions of supervisions, including required virtual check-ins and court appearances. (*Id.*) Despite prior technical difficulties with the ISAP application, "Bismark," Petitioner consistently attempted to comply with U.S. Immigration and Custom's ("ICE") reporting requirements. (*Id.*) Petitioner also did not commit any crimes. (*Id.*)

On December 13, 2025, Petitioner checked in on the Bismark application for his ICE check-in. (*Id.*) After checking in on the application and without prior notice, ICE suddenly arrested him outside of his home. (*Id.*) Petitioner maintains nothing has transpired since his original release that makes him a flight risk or danger to the community. (*Id.*) Petitioner now challenges the lawfulness of his civil detention and seeks release. (*See* ECF Nos. 1, 2.)

///

---

[2] The instant factual background is taken largely verbatim from Petitioner's brief in support of his motion for TRO. (ECF No. 2.)

2

## II. STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III. ANALYSIS[3]

### A. Likelihood of Success on the Merits

Petitioner argues his detention violates both his substantive due process and procedural due process rights guaranteed by the Fifth Amendment Due Process Clause. (ECF No. 2 at 12–20.) The Court discusses each claim in turn.

#### i. *Violation of Substantive Due Process*

The Fifth Amendment Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom

---

[3] The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email that he would be filing the motion and served copies of the documents. (*See* ECF No. 2 at 2.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

3

from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Id.* at 690. However, "in certain special and narrow nonpunitive circumstances," nonpunitive government detention does not violate the Clause "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). "In the context of civil immigration detention, the two 'regulatory goals' of the Immigration and Nationality Act ["INA"] provisions governing such detention — 'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community' — can provide such 'special justification.'" *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (citing *Zadvydas*, 533 U.S. at 690; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025)). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (2017)).

Here, Petitioner argues his detention is not justified by a legitimate purpose, as he is neither a danger nor a flight risk, which is evidenced by Respondents previously releasing him from custody. (ECF No. 2 at 13.) The Court finds Petitioner's arguments persuasive. With respect to whether Petitioner is a danger to the community, Petitioner states he has no criminal history or any intervening criminal arrests since his release. (*Id.* at 15.) With respect to whether Petitioner is a flight risk, Petitioner asserts he has made a good-faith effort to comply with all terms of his release. (*Id.*) Petitioner notes he was arrested while actively complying with a virtual ICE check-in, which required logging into the Bismark application and uploading a photograph of himself at his residence. (*Id.*) The Court further finds persuasive Petitioner's argument that there is further mitigation of flight risk because he has a viable path toward immigration relief and a pathway to lawful permanent residence through his asylum application. (*Id.*); *cf. Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) (finding there is no public safety concern or flight risk for plaintiffs with "bona fide asylum claims and who desire to remain in the United States"). In light of the foregoing, the Court finds

— at the very minimum — Petitioner raises serious questions on the merits of his substantive due process claim.

### ii.     Violation of Procedural Due Process

Petitioner has established a likelihood of success on his claim that his detention violates his procedural due process rights. (ECF No. 2 at 16–20.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### a)     Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional

5

release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he gained a liberty interest in his continued freedom after he was released on his own recognizance. (ECF No. 2 at 10, 16.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner asserts he has at all times acted in good faith and diligently complied with all conditions of supervision, including required virtual check-ins and court appearances. (*Id.* at 11.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### b) Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner asserts he has been completely deprived of his physical liberty and because he faces civil detention, "his liberty interest is arguably greater than the interest of the parolees in

6

*Morrisey*." (ECF No. 2 at 17 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner asserts Respondents grabbed him by surprise as he was leaving his home following an instruction to provide his photo at a virtual, unscheduled ICE check-in, and detained him with no notice and no opportunity to contest his re-detention before a neutral decisionmaker. (ECF No. 2 at 17); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")). Thus, the Court finds there is a serious likelihood Petitioner was likely erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Here, Petitioner asserts the Government's interest in detaining him without first providing notice and submitting to a custody hearing is minimal, as he has made a good faith effort to comply with all of his release requirements. (ECF No. 2 at 18.) The Court agrees. As stated above, Petitioner's arrest is evidence of his compliance because it occurred during a routine

7

check-in. (*Id.*) Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. As Petitioner correctly notes (*id.*), notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Petitioner contends applies to Petitioner. (ECF No. 2 at 10.) Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release and has no criminal history — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Petitioner asserts that Respondents have not provided any post-deprivation process. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes

1  irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v.*
2  *Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is
3  involved, most courts hold that no further showing of irreparable injury is necessary."
4  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting 11A Charles Alan
5  Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2d ed.
6  2004)).  Finally, "unlawful detention certainly constitutes extreme or very serious damage, and
7  that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999 (internal quotations
8  omitted).  Petitioner reiterates the foregoing in his motion. (ECF No. 2 at 21.)  And, as stated
9  above, Petitioner has stated colorable due process claims based on his current detention.  Thus,
10 Petitioner sufficiently establishes irreparable harm.

        C.      <u>Balance of Equities and Public Interest</u>

12 As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
13 balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.
14 Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
15 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities
16 tips decidedly in Petitioner's favor as the government "cannot reasonably assert that it is harmed
17 in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.*
18 *Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public
19 interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.
20 Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention
21 are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June
22 14, 2025) (internal citation omitted).  Petitioner asserts the balance of equities overwhelmingly
23 favors him, as he faces irreparable injury in the form of ongoing constitutional violations and
24 continued additional suffering if the TRO is not granted. (ECF No. 2 at 21.)  The Court agrees.
25 In sum, Petitioner establishes the balance of equities tips in his favor and an injunction is in the
26 public interest.
27 Accordingly, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's
28 immediate release on the same terms as he was released prior to his detention. *See Yang v.*

*Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner David G.M. from custody. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order. Respondents shall file responsive papers by **January 23, 2026**. Petitioner may file a reply, if any, by **January 27, 2026**. **The parties shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

5. Petitioner is ORDERED to immediately serve this Order and all documents filed in this case to date on Respondents, including a copy via email to: usacae.ecf2241-imm@usdoj.gov. **Petitioner shall file a proof of such service by 10:00 a.m. on January 20, 2026**;

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4);

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); and

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE